IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LAMONT A. CURTIS | * | |
| Petitioner | * | |
| v. | * | Civil Action No. JKB-11-3287 |
| STATE OF MARYLAND | * | |
| Respondent | * | |

\*\*\*

## MEMORANDUM

On December 13, 2011, this court required respondent to respond to the above-captioned petition, addressing the timeliness of the petition. ECF No. 5. The response has been filed (ECF No. 10) and alleges the petition is time-barred. Petitioner has filed a reply. ECF No. 12, 13, and 15.

In addition, petitioner has filed a motion for opportunity to file a reply (ECF No. 11) and two motions for appropriate relief (ECF Nos. 14 and 18). Because petitioner has already filed a reply, his motion for opportunity to file a reply will be denied as moot. The motions for appropriate relief seek to bar respondent from raising the time-bar claim because the answer was not filed in a timely manner (ECF No. 14) and to add an exhibit to the petition for writ of habeas corpus (ECF No. 18). Respondent sought and was granted an extension of time to file a response to the petition. ECF Nos. 7 and 8. The response was timely filed and petitioner's motion for appropriate relief is without merit. ECF No. 14. Petitioner's motion for appropriate relief with respect to the additional exhibit shall be granted.

### Background

Petitioner Lamont Curtis ("Curtis") challenges his June 13, 1996, conviction for attempted murder and use of a handgun from the Circuit Court for Baltimore City. *See State v.*

*Curtis*, Case No. 195272004 (Balt. City Cir. Ct.).[1]  He alleges that trial counsel rendered ineffective assistance when he failed to object to the state's closing argument impeaching the defense's alibi witness, that there was prosecutorial misconduct because of unfair statements made during closing argument with respect to the same alibi witness, and that appellate counsel was ineffective for failing to ensure an accurate record on appeal.

After a jury trial in the Circuit Court for Baltimore City, Curtis was convicted of attempted first-degree murder, assault, wearing or carrying a handgun, and use of a handgun in the commission of a crime of violence. ECF No. 10 at Ex. 2. After merging the convictions for assault and wearing or carrying a handgun, the court sentenced Curtis to life plus 20 years consecutive for the handgun conviction. Facts established at trial were summarized by the Court of Special Appeals and are set forth below:

> The victim of the shooting was James Sanders, also referred to in the record as Sanderson and Saunders. Mr. Sanders testified that, on the evening of November 22, 1994, he was "hacking"[2] for a person named Nike. He dropped Nike off near the intersection of Belvedere Avenue and Northern Parkway and waited to take Nike back home. While he was waiting, according to Mr. Sanders, appellant approached the car and asked Mr. Sanders what he was doing. Mr. Sanders testified that, during the course of the conversation, a prior incident, in which Mr. Sanders had charged appellant with battery and theft, came up. Appellant 'got silent' and shortly thereafter, shot Mr. Sanders several times.
>
> Mr. Sanders testified that, after being shot, he drove his car a block and a half until he collided with another vehicle. He told a police officer at the scene that he was shot by a person named Tony who lived in the seven-hundred block of Richwood Avenue. He also testified that, at the hospital, he was interviewed by Detective Raymond Laslett. Detective Laslett showed Mr. Sanders a photo array, and Mr. Sanders selected appellant's photo.
>
> Officer James Shea testified that he arrived at the scene shortly after the collision between Mr. Sanders's car and another car. Mr. Sanders was bleeding, and when Officer Shea asked him what happened, he replied that Tony from Richwood

---

[1] http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=195272004&loc=69&detailLoc=DSK8

[2] On cross-examination, Mr. Sanders explained that hacking is "driving people from different location to different location" for payment. ECF No. 10 at Ex. 2, p. 1.

2

> Avenue shot him. Officer Shea found a bullet fragment on the floor of the Sanders vehicle, an unspent cartridge on the back seat, and a spent cartridge casing on a manhole cover near the vehicle.
>
> Detective Raymond Laslett testified that he had received information that identified appellant as a suspect. He made a photographic lineup card and showed it to Mr. Sanders, who identified appellant. Detective Laslett then obtained an arrest warrant. He testified that he also wanted to obtain a search warrant, but the information on the address of 721 Richwood Avenue, which he had for the suspect, was several months old. Consequently, he requested other officers to do a "turn-up," which meant visiting the address to see if the person was there. A search warrant was never obtained, but the notes made by the officers relating to the "turn-up" are relevant to one of the questions raised by appellant and will be discussed later.
>
> James L. Waxter testified for the State as a firearms expert. He testified that the live and spent cartridges found in the car and on the manhole cover were of the same caliber and were made by the same manufacturer and are typically fired by a semi-automatic weapon. He also described how a semi-automatic weapon can jam and that the method of clearing a jam is to eject the unspent cartridge.
>
> Appellant presented three witnesses on his behalf. Charlene Rene Wise testified that she and appellant were living together in November 1994 and that, on the day that Mr. Sanders was shot, appellant was home with her. Anthony Jones testified that he had known both appellant and Mr. Sanders for many years. On a date subsequent to the shooting Mr. Sanders told Mr. Jones that a person he had hacked on a prior occasion had left a bag containing drugs in Sanders's vehicle; that Sanders had used some of the contents and sold the rest; and it was that person who shot him. Wayne David Miles testified that he lived in the house to which Mr. Sanders drove Nike the night of the shooting. Nike was there to meet with Miles's cousin because Nike and the cousin were drug dealers and Nike came to pick up some drugs to sell. Mr. Miles went outside after hearing gunshots and saw a person with a gun in his hand and stated that person was not appellant.

ECF No. 10 at Ex. 2, pp. 1–5. The Court of Special Appeals affirmed Curtis's conviction in an unreported decision dated August 1, 1997; the mandate issued on September 2, 1997. *Id.* at p. 13. The Court of Appeals denied certiorari review on November 13, 1997. *Id.* at Ex. 3. Curtis's conviction became final on February 11, 1998, the day his opportunity to seek certiorari with the United States Supreme Court expired.

3

Curtis filed for post-conviction relief on October 27, 1997, in the Circuit Court for Baltimore City. ECF No. 10 at Ex. 1, p. 6. On April 22, 1998, the petition was withdrawn and dismissed. Curtis filed an appeal concerning dismissal of the petition with the Maryland Court of Special Appeals, which remanded the case to the Circuit Court with directions for the court to submit a statement of reasons for dismissing the petition. *Id.* at Ex. 4. On October 23, 1998, the Circuit Court filed a memorandum and order dismissing Curtis's post-conviction petition. Curtis did not file an application for leave to appeal; therefore, post-conviction proceedings became final on November 23, 1998, when the time for filing an application expired. *See* Md. Rule 8-204.

On March 31, 2003, Curtis filed a motion to reopen his post-conviction proceedings. ECF No. 10 at Ex. 1, pp. 7-8. The motion was denied on November 29, 2004. Curtis filed an application for leave to appeal the denial of the motion, which was summarily denied by the Maryland Court of Special Appeals on August 10, 2005. The mandate issued on September 13, 2005. *Id.* at Ex. 5.

On June 11, 2007, Curtis filed a petition for writ of habeas corpus in the Circuit Court for Baltimore City, which was denied on June 20, 2007. *Id.* at Ex. 6. Curtis attempted to appeal the dismissal of the petition, but his appeal was dismissed. *Id.*

On July 24, 2009, Curtis filed another motion to reopen post-conviction proceedings. *Id.* at Ex. 1, p. 9. The motion was denied on November 17, 2009. The Court of Special Appeals summarily denied Curtis's application for leave to appeal on December 27, 2010; the mandate issued on February 10, 2011. ECF No. 10 at Ex. 7.

On February 24, 2010, Curtis filed a petition for "writ of actual innocence" which was denied on April 9, 2010, by the Circuit Court. *Id.* at Ex. 1, pp. 10–11. The Court of Appeals of

Maryland issues a reported opinion on October 27, 2011, affirming the denial of his petition. *Id.* at Ex. 8.[3]

## Standard of Review

A one-year statute of limitations applies to habeas petitions in non-capital cases for a person convicted in a state court. *See* 28 U.S.C. § 2244(d). This section provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

---

[3] The opinion concerns Curtis's petition as well as another case, filed pursuant to Md. Code Ann., Crim. Proc. § 8-301, which provides for Petitions for Writs of Actual Innocence based on newly discovered evidence. The statute governing petitions for actual innocence went into effect on October 1, 2009. The Court of Appeals held that the denial of a petition for writ of actual innocence is an immediately appealable order regardless of whether the trial court held a hearing on the merits of the petition. Additionally, the court held that a hearing on the merits of a petition for writ of actual innocence is only required where the "petition sufficiently pleads grounds for relief under the statute, includes a request for a hearing, and complies with filing requirements of § 8-301(b)." ECF No. 10 at Ex. 8, p. 3. The court reasoned that the "pleading requirement mandates that the trial court determine whether the allegations could afford a petitioner relief, if those allegations would be proven at a hearing, assuming the facts in the light most favorable to the petitioner." *Id.* at p. 20. The court went on to conclude that Curtis's petition did not concern newly discovered evidence because he admittedly knew about the information he claimed was new evidence (his Grandmother's assertion that she never mentioned the name Airy or Eri to the police) at the time of trial. *Id.* at p. 27.

This one-year period is tolled while properly filed post-conviction proceedings are pending. *See* 28 U.S.C. § 2244(d)(2); *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000). "[T]he one year limitation period is also subject to equitable tolling in 'those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation against the party and gross injustice would result.'" *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) (citing *Harris* 209 F.3d at 330). To be entitled to equitable tolling, Curtis must establish that either some wrongful conduct by respondents contributed to his delay in filing his petition or that circumstances beyond his control caused the delay. *See Harris*, 209 F.3d at 330.

## Analysis

Curtis's conviction was final on February 11, 1998. Post-conviction proceedings were pending, for purposes of tolling the filing limitation, from October 27, 1997, the date Curtis filed his initial post-conviction petition, to November 23, 1998, the date the time for filing an application for leave to appeal with the Court of Special Appeals expired. ECF No. 10 at Ex. 1, pp. 6–7 and Ex. 4. At the time Curtis filed his initial post-conviction petition, no time had elapsed on the one-year federal habeas corpus filing deadline. Thus, Curtis's filing deadline for federal habeas relief was November 23, 1999. The instant petition was filed on November 16, 2011, and is untimely. Curtis argues the merits of his petition should nonetheless be considered because he is actually innocent and failure to consider the merits of his petition would result in a miscarriage of justice. ECF No. 4 at p. 9.

Curtis claims police questioned his grandmother, Margaret Adkinson, when attempting to arrest him and noted that she mentioned the name Airy or Eri during the course of the conversation, which was then written in police notes. Curtis's alibi witness, Mr. Miles, claimed he had spoken to a man named Airy or Aaron about the shooting. During closing arguments, this mention of Airy by Miles was used to discredit his claim that he did not know Curtis. Defense

counsel did not object to the argument. Curtis maintains that the name Airy was never given to the police by either his grandmother or Miles. Curtis claims his grandmother should have been called as a witness to refute the claim she mentioned the name Airy and further asserts his trial counsel was ineffective for having failed to call her as a witness. Curtis also alleges that the State's Attorney's closing argument impeaching Miles amounted to prosecutorial misconduct because it referred to facts not in evidence. ECF No. 4 at pp. 9–10.

Curtis states in his reply that he is entitled to equitable tolling because he did not discover the new evidence until January 22, 2010, at which time he raised the claim with the state courts. ECF No. 12. He asserts he filed the claim as a petition for writ of actual innocence on February 24, 2010, which was denied on April 9, 2010, and later affirmed by the Court of Appeals on October 27, 2011. *Id.* He further claims that the state-created new law subjects final judgments to "reopen or attack" by new evidence. *Id.* Curtis filed the instant petition less than one month after the Court of Appeals issued its decision affirming dismissal of his petition. He states that this is evidence of his diligence in pursuing the claim. *Id.* Curtis further claims entitlement to equitable tolling because he is actually innocent having only been convicted by virtue of ineffective assistance of counsel and prosecutorial misconduct (ECF No. 13 at p. 1-3), because the state courts have made unreasonable determinations of fact or reached defective conclusions since the trial record contains errors (*Id.* at pp. 3–8), and it would be unconscionable to impose time bars against Curtis because he "is in limbo with this incorrect record" (*Id.* at pp. 8–10). The error Curtis refers to concerns whether or not the name Airy or Eri was written down by the police in the context of speaking with his grandmother. He states the "newly discovered evidence" is an affidavit from his grandmother averring that she never mentioned this name when she spoke with police. Curtis thus takes issue with the fact that the prosecutor

misstated facts in closing argument concerning his alibi witness. He concludes that the error has been compounded by the appellate courts' misunderstanding of the record which has deprived him of a proper appellate review.

Assuming, without deciding, that Curtis's claim of actual innocence could support an equitable tolling of the limitations period, he has failed to allege a viable claim of actual innocence. His focus on the police notes, whether they contained the name Airy, and the use of the information during closing to suggest his alibi witness knew him, is simply a red herring. The victim in this case identified Curtis as the shooter, a man with whom he had been acquainted. Whether Curtis's alibi witness was discredited or not, the jury could still reasonably conclude that Curtis committed the crime. As observed in the Court of Appeals opinion:

> [E]ven if the affidavit was newly discovered evidence, the grandmother's testimony would be unlikely to create a significant or substantial possibility that Curtis would be found not guilty because the affidavit does not undermine the victim's unequivocal testimony that Curtis shot him.

ECF No. 10 at Ex. 8, p. 27.

New evidence relied upon to support a claim of actual innocence may consist of "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citation omitted). The new evidence must do more than undermine the finding of guilt; it must affirmatively demonstrate innocence. *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999). The affidavit of Curtis's grandmother falls far short of affirmatively demonstrating innocence.

Additionally, the evidence is not "newly discovered." In rejecting Curtis's bid for a hearing on his petition for writ of actual innocence, the Court of Appeals found the evidence was not newly discovered because, "'exculpatory evidence known . . . prior to the expiration of the

time for filing a motion for a new trial, though *unavailable*, in fact is not newly discovered evidence.'" ECF No. 10 at Ex. 8, p. 27 (citing *Argyrou v. State*, 709 A.2d 1194, 1200 n.9 (Md. 1998)). Curtis's state petition indicated that he wanted to obtain an affidavit from his grandmother earlier, but could not due to her health and his incarceration. *Id.* at p. 28. The record of this case offers no basis for excusing the delay in presenting the instant claim. Curtis is not entitled to an equitable tolling of the limitations period, and the petition shall be dismissed as time-barred.

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rouse v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. Daniel*, 529 U.S. 473, 484 (2000)). Curtis has failed to demonstrate either required prong; therefore, a certificate of appealability shall be denied. A separate order follows.

_May 23, 2012_
Date

_James K. Bredar_
James K. Bredar
United States District Judge